GREAT AMERICAN INDEMNITY COMPANY, Appellant,

v.

Johnnie BROWN, Appellee.

No. 18972.

United States Court of Appeals, Fifth Circuit.

Sept. 6, 1962.

Robert J. Vandaworker, Baton Rouge, La., for appellant.

J. St. Clair Favrot, Baton Rouge, La., for appellee.

Before HUTCHESON, CAMERON and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal by Great American Indemnity Company, Defendant-Appellant, from a judgment in favor of Plaintiff-Appellee, Johnnie Brown, in a personal injury action resulting from an automobile accident. The driver of the automobile, insured by Great American, was found guilty of negligence and damages were awarded in a direct action against Great American as authorized by the laws of Louisiana. The case was tried by the court without a jury.

On the evening of December 24, 1955, Brown was driving on a highway in or near New Orleans, Louisiana. While attempting to negotiate a left turn, he was struck by a car owned by the Capital City Ford Company, Inc., insured by Great American, and operated by Coman S. Norton with the express consent of Capital City Ford Company, Inc. The impact of the collision propelled Brown's vehicle approximately 200 feet before it finally came to rest and Brown was seriously injured.

Prior to this accident, Brown performed heavy, laborious work for the Borden Company despite the residual effects of an attack of poliomyelitis suffered when he was a child. There was some testimony to the effect that this pre-existing condition was partially responsible for Brown's present disability. At any rate, when he attempted to return to work, he was unable to perform the necessary duties. Although the physicians disagreed as to the degree of Brown's disability, they were in agreement in refusing to certify that he was capable of performing strenuous manual labor.

Liability vel non is not an issue. The chief attack is directed to the amount of damages awarded. Paragraphs 7 and 8 of the plaintiff's complaint [1] alleged the

---

1. Paragraph 7:

"Plaintiff was badly injured in said accident; he had suffered poliomyelitis in his youth with resultant loss of function of some of musculature of his back and legs but had adapted to a state wherein he was able to perform manual labor without discomfort and was so engaged on the date of said accident; his left arm with which he was signaling a left turn was badly wrenched by the impact; his lumbar vertabrae and the muscles thereto appended were violently strained by the terrific impact from the rear which completely demolished his automobile; he was rendered unconscious by the force of the collision and the whiplash effect on his body; he is totally and permanently disabled to do work of any nature; he has suffered continuously from the time of the said accident because of his injuries and especially because of those to his back; he has lost earnings and will lose earnings in the future and has incurred expenses and will continue to incur expenses because of the said accident; in addition, his automobile and personal property therein was completely destroyed."

Paragraph 8:

"For all of his personal injuries, permanent injuries, physical pain and suffering and mental anguish, loss of earnings past and future, and expenses and damages, plaintiff claims the sum of $114,-000.00."

amount of special damages asked by the plaintiff without specifically itemizing the same. Great American objected to proof of special damages on the ground that they were not properly pleaded in accordance with Rule 9(g) of the Federal Rules of Civil Procedure, 28 U.S. C.A. This rule provides:

"(g) Special Damage. When items of special damage are claimed, they shall be specifically stated."

Great American contends that the rule requires that the plaintiff plead the amount as well as the type of any special damage claim.

■ It would be more accurate to say that the rule is designed to inform defending parties as to the nature of the damages claimed in order to avoid surprise; and to inform the court of the substance of the complaint. Schoen v. Washington Post, (100 U.S.App.D.C. 389, 1957) 246 F.2d 670, held:

"While the causal relationship between the damages and the specific libelous statements is not alleged with as great precision as might be possible or desirable, this complaint adequately notifies both appellee and the court as to the nature of the claimed damages. * * * At this stage in the litigation, giving the complaint the liberal benefits which the Rules require, we feel that facts setting forth special damages have been sufficiently stated to sustain the cause of action."

In Olson v. Shinnihon Kisen K.K., (D.C. Pa., 1960), 25 F.R.D. 7, it was said:

"* * * that once the issues are settled in pre-trial proceedings and by a pre-trial order, the case shall go to trial on the issues there deter-

mined, except of course to prevent manifest injustice, not here present."

■ In the instant case, it is interesting to observe the trial Judge's remarks as to the admissibility of evidence of special damages.[2] It appears that both Great American and the court had full notice of the claim for special damages. There was sufficient compliance with the rule.

■ Moreover, Great American had ample opportunity before trial to file a motion for a more definite statement as was done in Henry Pratt Co. v. Stoody Co., Inc., (D.C.S.D.Cal.1954) 16 F.R.D. 175 and in Kuenzell v. United States, (D. C.N.D.Cal.1957) 20 F.R.D. 96, the two cases cited by it. In Durkin v. John Hancock Mutual Life Ins. Co., (D.C.S. D.N.Y.1950) 11 F.R.D. 147, a motion to strike paragraphs alleging $500,000.00 as special damages was allowed. However, the court allowed the plaintiff to amend his complaint in order to allege such items of special damage. As to the sufficiency of the complaint there considered, Etten v. Lovell Mfg. Co., (D.C. W.D.Pa.1945) 4 F.R.D. 233, held:

"Ultimate facts are all that need be stated in a complaint, and in our opinion the complaint is sufficient. If additional particulars of the charge are required, they may be obtained either by bill of particulars or by depositions and discovery proceedings under the Rules of Civil Procedure."

Having neglected or failed to use these pre-trial procedures, Great American complains too late of failure to enumerate special damages in the complaint.

2. "The Court: I overrule the exception. This case has been a subject of pretrial conference. There has been no motion made of any kind to this allegation over loss of earnings and the loss of earnings was discussed. * * *"
 Again on the same objection:
 "The Court: Well, I don't see how counsel can be taken advantage of here. The complaint set out various items of damage and various elements of damage. It simply does not enumerate the amount of each but the suit is in a lump sum of a hundred and fourteen thousand dollars ($114,000.00). There was never any objection to that and all these matters were discussed at the pretrial conference. I don't see how anybody can be at any disadvantage here. Go ahead."

■ Great American introduced moving pictures at the time of the trial depicting the plaintiff performing some manual work while in the employ of an attorney as a caretaker at his summer residence. The films ostensibly show the plaintiff putting potatoes in a sack, plowing, hoeing a field, digging a ditch with a shovel and handling some bales of hay. These motion pictures, claims Great American, clearly show that Brown is unworthy of belief as a matter of law. Brown testified that he was unable to do strenuous manual labor. Actually, the films did not show Brown doing any *prolonged* strenuous work.[3] We recognize, and we believe the trial judge recognized, the difference in the requirements of Brown's duties under his employment as a helper on a farm and what would be expected of him by the Borden Company, or any other employer hiring labor, under the rigor of an eight-hour shift. The films showed the plaintiff doing normal farm chores and there is nothing to show that this was done without consequent pain. Indeed, he only worked short periods before he returned to the house, presumably to rest.

The alleged error is in essence aimed at the credibility of Brown as a witness. As stated in Rule 52(a) of Federal Rules of Civil Procedure: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." This subject is fully discussed in Sanders v. Leech (C.A.5, 1946) 158 F.2d 486. The case of Employers' Liability Assurance Corp., Ltd. v. Weeden, (5 Cir.1960) 274 F.2d 809, does not comfort Great American. That was a case where the cause was remanded for failure of the trial court to find facts and state conclusions of law. Findings were made in the instant case. Not only do we refuse to disturb such findings, we agree with them.

■ Finally, Great American complains of the denial of its motion for a new trial; and avers it procured 400 additional feet of motion pictures of Brown engaged in heavy lifting and other types of laborious work, after the trial but while the motion was pending. Such evidence, it urges, is proof positive that Brown had testified falsely concerning his ability to perform heavy work. Davis v. Yellow Cab Company of St. Petersburg, (5 Cir.1955) 220 F.2d 790, disposes of this contention:

"'(1) That a motion for a new trial is directed to the judicial discretion of the trial court, and its ruling thereon will not be disturbed in the absence of a clear abuse of that discretion; (2) that a motion for a new trial on the ground of newly discovered evidence may not be granted unless (a) the facts discovered are of such a nature that they will probably change the result if a new trial is granted * * * and (c) they are not merely cumulative or impeaching.' Brown v. Schwartz, 5 Cir., 164 F.2d 151, 152. * * * 'newly discovered evidence, the effect of which is merely to discredit, contradict or impeach a witness, does not afford a basis for the granting of a new trial.'"

---

3. The Court questioned the cameraman who took the films:
"The Court: You mean that every time you went out, five times, and each time you found him working either at one place or the other?
"The Witness: Yes, sir. Five different times that I was out in this area, I caught him working.
"The Court: Did you go other times when you couldn't find him working?
"The Witness: No, sir * * *
"The Court: Well, did he work all day on the 25th and 26th?
"The Witness: Well, he would be in and out. He'd go home and have coffee or go inside at times.
"The Court: How long did he work at a time ordinarily?
"The Witness: I'd say roughly an hour, an hour and a half at a time in view.
"The Court: Then go back inside?
"The Witness: Yes, sir.
"The Court: How long would he stay?
"The Witness: Oh, it varied. Sometimes a few minutes, sometimes an hour, an hour and a half."

**310**

Upon a full review of the record, we are in full accord with the conclusions reached and the judgment rendered by the trial court, and therefore the judgment is

Affirmed.