John DOE, etc., Plaintiff-Appellant,

v.

A CORPORATION, et al., Defendants-Appellees.

No. 82–2224.

United States Court of Appeals, Fifth Circuit.

July 22, 1983.

Rehearing and Rehearing En Banc Denied Sept. 28, 1983.

Anthony P. Griffin, Galveston, Tex., Elwyn C. Lee, Houston, Tex., for plaintiff-appellant.

Mark C. Rosenblum, Roy H. Steyer, D. Stuart Meiklejohn, New York City, Baker & Botts, Rafael H. Berk, Houston, Tex., for defendants-appellees.

Before RUBIN and TATE, Circuit Judges, and HUNTER,[*] District Judge.

ALVIN B. RUBIN, Circuit Judge:

A lawyer employed as house counsel for a corporation rendered legal advice concerning employee benefits to the corporation and to the administrators of its benefit plan. After he resigned from employment with the corporation, he sued for benefits allegedly due him under the corporation's pension and life insurance plans. He also sought to represent a class of other employees allegedly entitled to those benefits. We affirm the district court's judgment holding that he is barred by his ethical obligations as a lawyer from prosecuting such litigation as the class representative of other employees. However, we hold that he may prosecute an action in his own behalf and reverse that part of the judgment dismissing his personal claims.

I.

The plaintiff, who is identified as John Doe,[1] was employed in the legal department of A Corporation from 1975 to 1980. In his professional capacity as a lawyer, he consulted with and advised both A Corporation and the administrators of its Benefit Plan concerning legal questions about employee benefits, including those arising in the

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

1. To prevent identification of the company and the possible disclosure of confidential information concerning its affairs, the district court granted the defendant corporation's motion to seal the record; require the suit to be prosecuted without revealing the name of either the lawyer or the corporation; and enjoin Doe and his co-counsel from pursuing any actions arising out of the facts on which his suits were based, communicating with other persons to induce them to bring a similar action, and disclosing or using any information Doe gained during his employment by the corporation.

course of the administration of the Benefit Plan and those involving A Corporation's group life insurance policy and other benefits. He made daily decisions concerning the rights of individual employees and the acceptability of their beneficiary designations, gave the plan administrators legal advice, and worked with other lawyers in drafting plan provisions. These duties continued until Doe was transferred to A Corporation's litigation section in April 1979. He resigned in March 1980.

Eleven months later Doe filed suit against A Corporation and X Insurance Company, asserting a claim arising under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1453 (1976 & Supp. V 1981), as well as pendent claims arising under state law. Doe alleged that X Insurance Company had issued a group policy insuring the lives of A Corporation's employees. He alleged that premiums were paid on a contributory basis, partly by A Corporation and partly by its employees. As a result of its favorable experience, Doe claimed, X Insurance Company had paid dividends to A Corporation, which A Corporation retained without disclosing their receipt to its employees or to "the appropriate federal and state agencies." Doe also contended that he was improperly denied conversion of his policy to a "comparable term life" policy upon termination of his employment and was offered only the right to convert to whole life insurance. Doe conceded that, as part of his legal duties for A Corporation, he had advised the corporation whether it had a duty to disclose its receipt of dividends to plan participants.

In a separate suit against A Corporation and its Benefit Plan, Doe contended that his pension benefits should have been vested when he resigned. This claim was based on a provision in the plan, required by ERISA, vesting plan benefits in an employee who has been employed for five years. Doe had completed four years and 1600 hours of employment and argued that this was legally sufficient for vesting under the plan and the applicable federal statute. *Id.* § 1053.

Doe signed the pleadings in each suit as co-counsel. In each he sought, in addition to prosecuting his own claim, to appear as representative of a class of employees having like claims. In each he sought broad relief for the members of the class, including equitable relief and damages, a "special award" for himself of one-third of any recovery, and an attorney's fee for himself and his co-counsel based on a percentage of the class recovery.

A Corporation filed a motion to dismiss, to enjoin Doe and his co-counsel from prosecuting the suit, and to seal the record on the ground that Doe was barred from initiating a lawsuit because its prosecution would result in his violating the attorney-client privilege and in his disclosing confidential information. Benefit Plan, represented by the same counsel as A Corporation, joined in the motion. Doe withdrew as co-counsel for the class but continued to assert his right to appear both as an individual plaintiff and as a representative of the plaintiff class.

The district court treated the motion as one for summary judgment. It granted the motion, holding that Doe was disqualified to sue either A Corporation or Benefit Plan because they were his former clients. Relying on an irrebuttable presumption that the substantial relationship between Doe's duties for A Corporation and the issues in the suit would lead Doe to use his former clients' confidential information to their detriment in prosecuting the action,[2] the court dismissed both suits with prejudice to Doe but without prejudice to a suit by any present or future employee of A Corporation.

A client is usually entitled to counsel of his choice. But the lawyer may be forbidden by ethical strictures to accept tendered employment. Because Doe has now withdrawn as counsel, we must go beyond the

---

**2.** *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341, 1347 (5th Cir.1981); *see Wilson P. Abraham Construction Corp. v. Arm-*  co *Steel Corp.,* 559 F.2d 250, 252 (5th Cir.1977) (per curiam).

question whether he would be barred from acting as a lawyer for others whose interests conflict with those of his former client and consider how those ethical standards constrain his conduct in representing others as class representative, albeit not lawyer, and in asserting his own claims.

## II.

█ The attorney-client privilege is evidentiary. A client may invoke it to prevent his lawyer from revealing communications made in confidence to the lawyer while acting in the capacity of professional legal adviser for the purpose of obtaining legal advice.[3] However, during the course of representing a client, a lawyer may receive information that is not shielded by the privilege but is considered confidential by the client. He may, for example, receive information from some source other than the client or information imparted for a purpose other than obtaining legal advice.

Some of the information Doe acquired about A Corporation's affairs was protected by the attorney-client privilege. However, he apparently gained other information that was not privileged. For example, he apparently saw letters and other documents that originated with X Insurance Company and received and answered questions from other A Corporation employees about their rights.

The Code of Professional Responsibility seeks to safeguard both the attorney-client privilege and other confidential information by restricting a lawyer's ability to accept employment that would threaten disclosure of either. Canon 4 deals directly with the matter: "A Lawyer Should Preserve the Confidences and Secrets of a Client." But other principles are also applicable, for Canon 9 states, "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." These provisions protect not only

against disclosure of privileged communications but also against the revelation of confidential information that is not privileged.[4]

Ethical Consideration 4–4 states: "The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." The ethical duty extends to shielding the confidentiality of all information acquired in the course of representing a client, preventing the use of any such knowledge to the client's disadvantage. "The use of the word 'information' in these Ethical Considerations as opposed to 'confidence' or 'secret' is particularly revealing of the drafters' intent to protect all knowledge acquired from a client ... without regard to whether someone else may be privy to it." *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 (5th Cir.1979).

Adherence to Canon 4 requires that a lawyer be disqualified from representing a party to litigation if the adversary party can show that matters in the pending suit are substantially related to matters in which the attorney previously represented the adversary.[5] A substantial relationship between issues in a lawsuit and a lawyer's earlier work for an adversary may also serve as the basis for disqualification under Canon 9.

If a lawyer seeks to act adversely to his former client in a matter that might involve disclosure of information acquired during the prior employment, the former client need not prove that the lawyer has used or is likely to use such information in order to disqualify the lawyer representing the party suing him. In *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341 (5th

---

**3.** *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172 (5th Cir.1979); *see* VIII J. Wigmore, Evidence § 2292 (McNaughton rev. 1961) (discussing attorney-client privilege); Bartell, *The Attorney-Client Privilege and Work Product Doctrine* 6–21 (1982) (same in corporate context).

**4.** *See Brennan's, Inc.,* 590 F.2d at 172 (ethical duty under Canon 4 broader than attorney-client privilege).

**5.** *Wilson P. Abraham Construction Corp.,* 559 F.2d at 252.

Cir.1981), we held that there is a conclusive and irrebuttable presumption that permitting the lawyer who has switched loyalties to represent the adversary of a former client in substantially related litigation will lead to disclosure and misuse of confidential information obtained during the previous representation.[6]

■ In *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1032 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981), we recognized that a violation of Canon 4 may also be the premise of a Canon 9 disqualification. More recently, in *Corrugated Container,* we used Canon 4 "to inform our Canon 9 analysis [to] avoid[ ] any possible harshness that might come from applying Canon 9 in the abstract." 659 F.2d at 1345 n. 4. The applicability of Canon 9 turns on whether the moving party has shown that there is a reasonable possibility of the occurrence of some specifically identifiable improper conduct and whether the likelihood of public suspicion outweighs the social interest in the lawyer's continued participation in the case.[7]

If Doe were still attempting to represent the class as its lawyer, he would have a patent conflict of interest. As the Ninth Circuit stated in this precise context,

It must be remembered that the attorney in such situations as this does not have the shelter enjoyed by a defendant whose adversary must meet a burden of proof. Where conflict of interest or abuse of professional confidence is asserted, the right of an attorney freely to practice his profession must, in the public interest, give way in cases of doubt.[8]

■ The standard of ethical conduct we exacted in *Corrugated Container* not only disqualifies Doe from representing a class as lawyer but also bars him from disclosing information he received from A Corporation to some other lawyer.[9] A lawyer is not merely a panderer who is to do for a client anything that the client would like to do himself had he but the lawyer's knowledge. As a member of a profession that enjoys the exclusive license to engage in the practice of law, he is required to deny requests that would violate the ethical tenets of his profession even at the sacrifice of self-interest.[10]

The responsibilities of a class representative are not identical to those of the lawyer for the class. The class representative need not be a member of the bar and is not subject to the profession's ethical constraints. But a representative owes duties to the class that require him to exert the utmost diligence on behalf of all of its members.[11] To allow Doe to act as class

---

**6.** *See also Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1028–32 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 89 (5th Cir.1976); *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 570–71 (2d Cir.1973).

**7.** *United States v. Snyder,* 707 F.2d 139 (5th Cir.1983); *Zylstra v. Safeway Stores, Inc.,* 578 F.2d 102 (5th Cir.1978).

**8.** *Chugach Elec. Ass'n v. United States District Court,* 370 F.2d 441, 444 (9th Cir.1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967). We held in *Zylstra* that an attorney who is a member of a class is *per se* disqualified under Canon 9 from serving as class counsel. 578 F.2d at 104.

**9.** *See Housler v. First Nat'l Bank,* 484 F.Supp. 1321, 1322–24 (E.D.N.Y.1980) (bank's former general counsel enjoined from associating self

in any manner with plaintiffs or their counsel, from disclosing any secrets or confidential information gained during employment with bank, and from communicating with shareholders to induce intervention in or filing of suits); *Richardson v. Hamilton International Corp.,* 333 F.Supp. 1049, 1055 (E.D.Pa.1971), *aff'd,* 469 F.2d 1382 (3d Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *Doe v. A Corp.,* 330 F.Supp. 1352, 1355 (S.D.N.Y. 1971), *aff'd per curiam sub nom. Hall v. A Corp.,* 453 F.2d 1375 (2d Cir.1972) ("for the reasons stated in the [district court's] opinion").

**10.** "[T]he profession of the law, in its nature the noblest and most beneficial to mankind, is in its abuse and abasement the most sordid and pernicious." *State v. Horan,* 21 Wis.2d 66, 70, 123 N.W.2d 488, 490 (1963) (per curiam).

**11.** *See Lewis v. Phillip Morris, Inc.,* 419 F.Supp. 345, 352 (E.D.Va.1976) ("vigorously and tena-

representative would create a tension between his obligation as representative to do all he can to vindicate the rights of the class members and his personal ethical duty to protect A Corporation's secrets. A lawyer may not, simply by assuming a new identity, escape the strictures that would govern his conduct were he representing the class as counsel. Doe contends that he must be permitted to represent the class because he has yet another identity as a fiduciary for Benefit Plan and his fellow employees of A Corporation. Although the attorney-client privilege may be inapplicable when either the lawyer or the client stands in a fiduciary relationship to the party seeking disclosure,[12] Doe simply was not such a fiduciary. He was a lawyer for and representative of A's corporate interest.[13]

If there are meritorious causes of action against A Corporation, someone other than Doe can and must file the suit as class representative just as someone other than he must act as class counsel.[14] Obviously, Doe may not divulge information that would enable another to volunteer as class representative. If no other class member ever learns of the claim, it may go forever unvindicated. The lawyer's duty to his client creates the possibility that his silence will permit valid claims to lie unasserted.

### III.

The assertion of ethical barriers to Doe's attempt to vindicate his personal claims creates a conflict with another fundamental policy: the availability of a legal forum for the adjudication of rights. The Supreme Court has recognized that, in some circumstances, access to courts is protected by the due process clause. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). While the *Boddie* principle does not give any broad "right" of access to federal court,[15] the courtroom door should not lightly be barred to a person who has a tenable legal claim.

The conflict between protection of the client's need for confidentiality and the lawyer's opportunity to assert claims against that client cannot be resolved on the basis that one enjoys universal primacy over the other. The Code makes confidentiality the general principle[16] but recognizes exceptions to the prohibition against divulging even a client's secrets. Thus, Disciplinary Rule 4–101(C) provides that a lawyer may reveal confidential information and secrets when it is *necessary* for him to do so to prevent the client from committing a crime, to collect a fee, or to defend himself against an accusation of wrongful conduct. The rationale for the last of these exceptions is: "It would be a manifest injustice to allow the client to take advantage of the rule of exclusion as to professional confidence to the prejudice of his attorney, or that it should be carried to the extent of depriving the attorney of the means of ob-

---

ciously" protect interests of entire class), *vacated on other grounds sub nom. Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135 (4th Cir.1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979); *cf. Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir.) (lawyer-class representative properly did not seek to be counsel for class because of conflict between potential fee and duty to class members; his law partner disqualified from acting as counsel to class), *cert. denied*, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976).

**12.** Bartell, *supra*, note 3, at 57–62.

**13.** *See* Smyser, *In-House Corporate Counsel: The Erosion of Independence*, in Nader & Green, Verdicts on Lawyers 208, 215 (1977).

**14.** *See Richardson*, 333 F.Supp. at 1055.

**15.** *See United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *cf. Allen v. McCurry*, 449 U.S. 90, 103–04, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308, 318–19 (1980) ("difficult to discern" authority for proposition that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in federal court). The right of access to the courts may, in some circumstances, be protected by the first amendment right to petition the government for redress of grievances. *Bill Johnson's Restaurants, Inc. v. NLRB*, —— U.S. ——, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983); *see also Ryland v. Shapiro*, 708 F.2d 967, 971–972 (5th Cir.1983).

**16.** Disciplinary Rule 4–101(B).

taining or defending his own rights." ABA Opinion 250 (1943).[17]

In none of the cases relied upon by A Corporation has a lawyer been prohibited from asserting a personal cause of action. In *Richardson v. Hamilton International Corp.*, 469 F.2d 1382 (3d Cir.1972), *cert. denied*, 411 U.S. 986, 98 S.Ct. 2271, 36 L.Ed.2d 964 (1973), the plaintiff was an attorney who held stock in the defendant corporation. He had represented the corporation in his private practice before filing the lawsuit. He filed a shareholder's derivative action as a class action. The court disqualified him from appearing as a lawyer in the action and prohibited him from maintaining the suit while recognizing that another shareholder could maintain the action. 469 F.2d at 1386 n. 13. Because a derivative suit is brought on behalf of the corporation, not the suing individual, the lawyer was not seeking to assert a cause of action to vindicate his personal rights. Similarly, *Doe v. A Corp.*, 330 F.Supp. 1352 (S.D.N.Y.1971), *aff'd per curiam sub nom. Hall v. A Corp.*, 453 F.2d 1375 (2d Cir.1972), was an attempt by a lawyer to assert a shareholder's derivative suit.

*Meyerhofer v. Empire Fire & Marine Insurance Co.*, 497 F.2d 1190 (2d Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974), contains language arguably to the contrary. The court affirmed a district court decision "[t]o the extent that the orders appealed from prohibit [the attorney] from *acting* as a party or as an attorney for a party . . . ." 497 F.2d at 1196 (emphasis added). Yet the court had earlier in its opinion stated: "[The attorney] never *sought* to 'prosecute litigation,' *either as a party* or as counsel for a plaintiff party." *Id.* at 1195 (emphasis added; citation omitted).

The distinction between what is forbidden to the lawyer appearing as an attorney-at-law and what is permitted an individual who is a lawyer but asserts only his personal rights was drawn in *Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir.1975). The court affirmed the disqualification of a law firm seeking to represent a potential intervenor in a sex discrimination suit. The intervenor was herself a lawyer and an employee of the defendant; she had worked on the defense of the sex discrimination suit in which she sought to intervene. The court made clear that: "This decision should not be read to imply that . . . [the lawyer] cannot pursue her claim of employment discrimination based on sex." *Id.* at 572.[18]

In an attempt to demonstrate that Doe has been guilty of unethical conduct that should be added to the balance against him, A Corporation has brought to our attention material of record indicating impropriety. Before filing suit, Doe threatened A Corporation with litigation on behalf of a purported class if it did not meet demands that included the payment to him of a "contingent attorney fee" of 10% of a fund he described as "millions of dollars." From his actions thereafter, something other than a disinterested effort to vindicate the rights of a group of wronged employees might be inferred. When he filed suit, he did not seek only redress for his own claims and for those members of the classes he wished to represent: in the suit involving the group insurance, he demanded payment to himself, personally, of a "special award" of one-third of the "class" recovery, which he asserted to be in the "millions," as well as treble damages, and he sought "at least $300,000" as personal recompense in the suit against the Benefit Plan. In addition, he signed the complaints as co-counsel, and sought to be awarded an attorneys' fee in

---

17. *See Meyerhofer v. Empire Fire & Marine Insurance Co.*, 497 F.2d 1190, 1194–95 (2d Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974); *see also Tasby v. United States*, 504 F.2d 332, 336 (8th Cir.1974), *cert. denied*, 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975); *Laughner v. United States*, 373 F.2d 326, 327 n. 1 (5th Cir.1967); VIII J. Wigmore, *supra* note 3, at § 2327(6).

18. *But see NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 136 n. 1 (2d Cir.1976) (Mansfield, J., concurring) ("[I]t is difficult to understand how [the lawyer] could accomplish this when, as the [*Hull*] decision holds, both she and any counsel representing her would be automatically disqualified.").

both actions, the fee in the group insurance suit to be based on a "percentage" of the "class" recovery. If, indeed, it develops after the facts are fully explored that Doe attempted either to blackmail or to mulct the corporation, we do not condone that conduct. If he has violated the Code of Professional Responsibility, disciplinary charges should be brought against him.[19] The district court did not, however, dismiss Doe's personal claim because of his misconduct. The district judge granted summary judgment on the basis that Doe's prior representation of A Corporation was a *per se* bar. A lawyer, however, does not forfeit his rights simply because to prove them he must utilize confidential information. Nor does the client gain the right to cheat the lawyer by imparting confidences to him.

■ The sole interest A Corporation can assert, other than defeating Doe's claim, is preservation of confidentiality for the secrets Doe learned while in its employment. The corporation's interest in confidentiality, however, can be at least partially protected by anonymity. There is no social interest in allowing the corporation to conceal wrongdoing, if in fact any has occurred. Nor is there any social interest in allowing it to deny Doe pension rights or insurance benefits if they are legally due him. But that would be the effect of our refusing to allow Doe to prosecute his individual lawsuit.

**IV.**

Doe, in turn, seeks to disqualify counsel for the defendants on the basis that they represent both A Corporation and the Benefit Plan, whose interests are allegedly conflicting. He relies on Disciplinary Rule 5–105(B), which provides: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C)."

■ Counsel representing both A Corporation and Benefit Plan assert that they have made a full disclosure to their respective clients and that both have consented to the joint representation, waiving any possible claim of conflict of interest which may arise. A potential or even real conflict of interest may, of course, be waived,[20] even in criminal cases.[21] At the moment, A Corporation and Benefit Plan share an important common interest in seeking to prevent misuse of their confidences by their former lawyer and employee. While their interests may at some time diverge, it is for them, once fully informed, to determine whether their lawyer can be faithful to both of their interests.

Accordingly, we AFFIRM as much of the judgment as dismisses the class action claims in both suits without prejudice,

---

**19.** In *Meyerhofer,* the attorney presented his arguments regarding his client's wrongdoing to his superiors and resigned when they refused to take his advice. He then went to the Securities and Exchange Commission and presented his position. *See* 497 F.2d at 1193–94. This conduct was in keeping with his ethical obligations. *See id.;* Ethical Consideration 9–1 ("A lawyer should promote public confidence in our system and in the legal profession").

**20.** Disciplinary Rule 5–105(C) provides:
(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

*See Westinghouse Elec. Corp. v. Gulf Oil Corp.,* 588 F.2d 221, 229 & n. 8 (7th Cir.1978) (collecting cases); *Halperin v. Kissinger,* 542 F.Supp. 829, 830–32 (D.D.C.1982). Whether the client is prudent in waiving a conflict is for the client, not the court, to decide. *But cf. Murphy v. Washington American League Base Ball Club,* 324 F.2d 394 (D.C.Cir.1963) (separate representation required for corporation and individual officer-defendant); *Milone v. English,* 306 F.2d 814 (D.C.Cir.1962) (union and individual officer-defendant).

**21.** *See Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 345 (1980); *Holloway v. Arkansas,* 435 U.S. 475, 482–83, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978).

places the case records under seal, and enjoins Doe and co-counsel from communicating with other persons to induce them to file suit and from disclosing any confidential information Doe gained during his employment by A Corporation. We REVERSE the judgment insofar as it dismisses Doe's personal claim with prejudice and REMAND for further proceedings consistent with this opinion. Each party shall bear its own costs.